UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CASE NO.  3:22-CR-00288** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **BONNIE JENNIFER SHERRARD** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

<u>**MEMORANDUM RULING**</u>

Pending before the Court are three Motions [Doc. Nos. 43, 44, and 45] filed by Defendant Bonnie Jennifer Sherrard ("Sherrard"). The Motions are a Motion to Exclude the Government's Proposed Expert Witnesses, or, in the Alternative, to Compel Supplemental Expert Disclosures [Doc. No. 43]; Motion in Limine to Preclude Evidence of Other Investigations and Certain Evidence Related to Prescription Use in General Beyond what is Applicable to the Patients Contained in the Bill of Information [Doc. No. 44]; and a Motion to Exclude Data from the Prescription Drug Monitoring Program Database ("PDMP") [Doc. No. 45].

The Government opposes Sherrard's Motions [Doc. No.49]. The Government maintains that Defendant's Motion [Doc. No. 43] should be denied as premature. The Court's Scheduling Order [Doc. No. 42] provides that the Government's Expert Notices are not due until August 8, 2024.[1] Further, the Government argues that Defendant's Motions [Doc. Nos. 44 and 45] should be denied because the evidence provides context for the jury.

For the following reasons, the Defendant's Motions are **GRANTED IN PART** and **DENIED IN PART.**

---

[1] [Doc. No. 49].

1

I. BACKGROUND

Sherrard was indicted for Improper Use of a DEA Registration Number (21 U.S.C. § 843(a)(2)) and 40 counts of Improper Dispensation of Controlled Substances Without a Legitimate Medical Purpose and Outside the Usual Course of a Professional Practice (21 U.S.C. § 841(a)(1)).[2] This trial is set for September 23, 2024.[3]

II. LAW AND ANALYSIS

A. Expert Witnesses

Sherrard claims that the Government should be precluded from calling various expert witnesses at trial because their disclosures provide an insufficient basis to determine whether the proposed testimony is relevant and reliable under *Daubert*.[4] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). Further, Sherrard requests that, in the alternative, the Government should be ordered to supplement their expert disclosures to fully comply with Rule 16 of the Federal Rules of Criminal Procedure.[5] The Government asserts that the Defendant's Motion is premature because the Government's deadline for providing expert notices is August 8, 2024 [*see*, Scheduling Order [Doc. No. 42, p. 4]].[6] The Court agrees with the Government.

An expert witness "may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of

---

[2] [*Id.*].
[3] [*Id.*].
[4] [Doc. No. 43-1].
[5] [*Id.*].
[6] [Doc. No. 49].

2

the principles and methods to the facts of the case." Fed. R. Evid. 702. In *Daubert*, 509 U.S. at 597, the Court held that "the Rules of Evidence … do assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."

Fed. R. Crim. P. 16(a)(G)(i) provides that "[a]t the defendant's request, the government must disclose to the defendant, in writing, the information required by (iii) for any testimony that the government intends to use at trial under Federal Rule of Evidence 702, 703, or 705." "The disclosure for each expert witness must contain: a complete statement of all opinions that government will elicit from the witness in its case-in-chief…; the bases and reasons for them." Rule 16(a)(G)(iii).

Because there have been no expert disclosures filed and these disclosures are not yet due, the Defendant has no viable claim for excluding the purported expert testimony. Clearly, the expert testimony cannot be said to be unreliable or irrelevant when there is no testimony presented. Further, the Court cannot order the Government to provide supplemental disclosures in compliance with Fed. R. Crim. P. 16 where no disclosures have been made and where such disclosures are not yet due under the Court's Scheduling Order.

Thus, the Defendant's Motion to Exclude the Government's Proposed Expert Witnesses is **DENIED AS PREMATURE.**

### B. Data from the Prescription Drug Monitoring Program Database

#### 1. Federal Rules of Evidence 401, 404, and 403

Defendant contends that the PDMP data would be unfairly prejudicial and irrelevant.[7] The Court disagrees.

---

[7] [Doc. No. 45-1].

Evidence is relevant if it "has a tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Irrelevant evidence is not admissible, and relevant evidence is admissible, unless provided otherwise by the United States Constitution, a federal statute, the rules of evidence, or other rules prescribed by the Supreme Court of the United States. Fed. R. Evid. 402.

The court may exclude relevant evidence if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. As virtually all evidence is prejudicial—or otherwise it would not be material, "unfair prejudice" is not to be equated with testimony simply adverse to the opposing party—the prejudice must be unfair. *Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613 (5th Cir. 1977). Further, the trial court's discretion to admit or exclude evidence is generally broad, but competent evidence cannot be excluded without a sound and acceptable reason. *Ramos v. Liberty Mut. Ins. Co.*, 615 F.2d 334 (5th Cir.), *decision clarified on denial of reh'g*, 620 F.2d 464 (5th Cir. 1980).

To render a conviction of the counts of violating 21 U.S.C. § 841, the Government is required to prove that (1) Sherrard "'distributed or dispensed a controlled substance, (2) that [she] acted knowingly and intentionally, and (3) that [she] did so other than for a legitimate medical purpose and in the usual course of [her] professional practice.'" *U.S. v. Evans*, 892 F.3d 692, 703 (5th Cir. 2018) (*quoting United States v. Norris*, 780 F.2d 1207, 1209 (5th Cir. 1986)).

Here, Defendant was convicted of improper dispensation of a controlled substance. Clearly, the PDMP data is relevant to show elements of the offense of the crime that Sherrard was charged with in the Indictment. Further, the risk of unfair prejudice is outweighed by the probative value of the evidence from the PDMP.

Thus, the Defendant's Motion to Exclude the PDMP data is **DENIED.**

### 2. Hearsay and the Confrontation Clause

Sherrard contends that the PDMP data should be excluded from evidence because it is inadmissible hearsay that violates the Sixth Amendment Confrontation Clause.[8] The Government argues that the PDMP data is admissible because an expert witness utilized it to reach his opinion. The Court agrees with the Government.

Hearsay is a statement made by the declarant outside the trial offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c). To qualify as "testimonial," a statement must have a "'primary purpose' of 'establishing or proving past events potentially relevant to later criminal prosecution,'" *Bullcoming v. New Mexico*, 564 U.S. 647, 659 (2011) (quoting *Davis v. Washington*, 547 U.S. 813, 822 (2006)).

The evidence intended to be introduced by the Government regarding the PDMP data is not inadmissible hearsay because the data is not being offered to prove the truth of the matter asserted. Further, it does not violate the Sixth Amendment Confrontation Clause because it is not testimonial since it is not used to prepare for future litigation.

The primary purpose of the PDMP "is to improve the state's ability to identify and inhibit the diversion of controlled substances and other drugs of concern in an efficient and cost-effective manner and in a manner that shall not impede the appropriate utilization of these drugs for legitimate medical purposes."[9]

The evidence of the PDMP data is not testimonial nor is it inadmissible hearsay because it is not prepared nor is it being introduced with the primary purpose of establishing that Defendant

---

[8] [Doc. No. 45-1].
[9] https://www.pharmacy.la.gov/assets/docs/PMP/PMP-GeneralInformation.pdf

improperly dispensed controlled substances. Instead, the PDMP data will be used to establish the basis on which the Government's expert formed their opinion.

"Rule 703 allows an expert to base his testimony on otherwise inadmissible hearsay evidence. Fed. R. Evid. 703. An expert's opinion may be based on both the evidence in the case and his education and experience." *U.S. v. Lockhart*, 844 F.3d 501, 511 (5th Cir. 2016) (citing *United States v. Williams*, 447 F.2d 1285, 1290 (5th Cir. 1971)).

Evidence of the PDMP data is clearly admissible because it is used by the expert witness to form the basis of his opinion. Thus, the evidence would be admissible regardless of the Sixth Amendment Confrontation Clause or Federal Rule of Evidence 803.

For the reasons above, the Court finds that Defendant's Motion to Exclude Data from the PDMP is **DENIED.**

### C.  Evidence of Other Investigations

Defendant contends that the Government should be precluded from referring to other investigations of any other agencies, physicians, pharmacies, or other patients besides those patients expressly included in the Bill of Information.[10] The Government contends that limited information regarding the origins of the DEA investigation should be admissible to provide context for the jury.[11] The Court agrees with the Government.

The DEA's Pharmacist Manual provides that "[t]o be valid, a prescription for a controlled substance must be issued for a legitimate medical purpose by a practitioner acting in the usual course of professional practice."[12] The DEA's pharmacist manual further provides that "[t]he person knowingly filling … as well as the person issuing it, shall be subject to the penalties

---

[10] [Doc. No. 44-1].
[11] [Doc. No. 49.].
[12] https://www.deadiversion.usdoj.gov/GDP/(DEA-DC-046R1)(EO-DEA154R1)_Pharmacist's_Manual_DEA.pdf

6

provided. 21 U.S.C. § 841(a)(1)."[13] 21 U.S.C § 841(a)(1) provides that "it shall be unlawful for any person knowingly or intentionally--(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance."

Evidence of the DEA's investigation is clearly relevant to provide context to the jury because the investigation is what led to the Defendant being charged with violating 21 U.S.C. § 841(a)(1).

Because the investigation of other agencies is relevant to the elements of the offense of the crime that Sherrard was charged with in the Indictment, the portion of her Motion requesting to exclude evidence of other investigation is **DENIED.**

### D. National Opioid Epidemic

Defendant argues that the Government should be prohibited from making any references to a national opioid epidemic. The Government does not intend to introduce any such evidence.

Therefore, the Motion on this issue is **DENIED AS MOOT.**

### E. Celebrity Deaths

Defendant argues that the Government should be prohibited from making any references to well-known and prominent celebrity deaths resulting from the abuse of any prescription medication.[14] The Government does not intend to introduce any such evidence.

Therefore, the Motion on this issue is **DENIED AS MOOT.**

### F. Negative Effects from the Use of Prescription Medications

Defendant argues that the Government should be prohibited from referencing any other deaths, instances of addiction, statistics, or alleged negative effects from the use of prescription

---

[13] *Id.*
[14] [Doc. No. 44-1].

medications not expressly covered by the scope of the indictment in this case.[15] Specifically, Defendant contends that this evidence has no tendency to prove the Defendant prescribed any controlled substances in violation of the specific statutes or prescribed controlled substances for illegitimate purposes.[16] The Court agrees with the Defendant.

In this case, the Government does not disclose specific evidence of the effects of the use of prescription medication. The Government merely asks for all evidence of prescription medication side effects to be allowed to prove that the drugs Defendant dispensed were Schedule II and IV drugs. However, the Government can prove this by reference to 21 U.S.C. § 812.

Title 21 U.S.C. § 812 provides the definition for Schedule II controlled substances as:

> (A) [t]he drug or other substance has a high potential for abuse; (B) [t]he drug or other substance has a currently accepted medical use in treatment in the United States or a currently accepted medical use with severe restrictions; (C) [a]buse of the drug or other substances may lead to severe psychological or physical dependence.

Schedule IV controlled substances are defined as:

> (A) [t]he drug or other substance has a low potential for abuse relative to the drugs or other substances in schedule III; (B) [t]he drug or other substance has a currently accepted medical use in treatment in the United States; (C) [a]buse of the drug or other substance may lead to limited physical dependence or psychological dependence relative to the drugs or other substances in schedule III.

The evidence intended to be introduced by the Government is not relevant nor is it of substantive probative value in helping the jury. The Government can provide the jury with definitions of the drugs without referencing any other deaths, instances of addiction, statistics, or alleged negative effects from the use of prescription medications.

Therefore, Defendant's Motion on this issue is **GRANTED.**

---

[15] [*Id.*].
[16] [*Id.*].

### G. Street Mixtures

Defendant argues that the Government should be precluded from making any reference to any prescription combinations as "Holy Trinities" or "Lethal Combinations" or to any slang or vernacular reference of any other post-prescribed mixtures of these substances in any "street" combinations.[17] The Government contends that street terms and lay terms should be used to aid the jury in properly identifying and distinguishing the various controlled substances because sometimes street terms and lay terms are synonymous. This Court agrees with the Government.

Therefore, the Defendant's Motion on this issue is **DENIED.**

### III. CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that Defendant's Motion to Exclude the Government's Proposed Expert Witnesses, or, in the Alternative, to Compel Supplemental Expert Disclosures [Doc. No. 43] is **DENIED** as premature.

**IT IS FURTHER ORDERED** that Defendant's Motion in Limine to Preclude Evidence of Other Investigations and Certain Evidence Related to Prescription Use in General Beyond what is Applicable to the Patients Contained in the Bill of Information [Doc. No. 44] is **GRANTED IN PART** and **DENIED IN PART.** To the extent that she moves to exclude as any references to a national opioid epidemic; any information pertaining to or referencing any use of prescription medication beyond what is initially prescribed, such as "street" mixtures or other vernacular names; and any references to well-known and prominent celebrity deaths resulting from abuse of any prescription medications, the Motion is **DENIED**. To the extent that she moves to exclude any references of any other deaths, instances of addiction, statistics, or alleged negative side effects

---

[17] [*Id.*].

from the use of prescription medications not expressly covered by the scope of the Indictment, the Motion is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Bonnie Jennifer Sherrard's Motion in Limine to Exclude Data From the Prescription Drug Monitoring Program Database [Doc. No. 45] is **DENIED.**

MONROE, LOUISIANA, this 11th day of July 2024.

Terry A. Doughty
United States District Judge